**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KIM SHRUM, parent and next
friend of T.J.S., a minor,

      *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

      *Defendant*.
_____/

CASE NO. 10-cv-13795

DISTRICT JUDGE MARIANNE O. BATTANI
MAGISTRATE JUDGE CHARLES E. BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff's minor child, T.J.S., is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## I.     REPORT

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and supplemental

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

security income ("SSI") benefits for Plaintiff's minor child. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 17, 20, 21.)

Plaintiff's son, T.J.S,[2] was 15 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 9, 12, 64.) Plaintiff filed the instant claim on May 5, 2006, alleging that T.J.S.'s disability began on April 15, 1993, his date of birth. (Tr. at 64.) The claim was denied at the initial administrative stages. (Tr. at 41.) In denying the claims, the Defendant Commissioner considered Attention Deficit Hyperactivity Disorder ("ADHD") as a possible basis of disability. (*Id.*) On March 17, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Jerome B. Blum, who considered the application for benefits *de novo*. (Tr. at 6-19, 27.) In a decision dated June 23, 2009, the ALJ found that T.J.S. was not disabled. (Tr. at 19.) Plaintiff requested a review of this decision on July 7, 2009. (Tr. at 62.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 21, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On September 23, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to

---

[2] Rule 5.2(a)(3) of the Federal Rules of Civil Procedure prohibits the use of a minor's name and requires that only a minor's initials be used.

the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon

an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. § 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . ." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child's impairment results in marked and severe

5

limitations, Social Security Administration ("SSA") regulations[3] prescribe a three step sequential evaluation process:

> 1. If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.
>
> 2. If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.
>
> 3. If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a). In the third step – namely, whether a child's impairment(s) functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The Social Security regulations list specific impairments relevant to step three, some of which apply only to children. *Id.* § 416.924(d). A claimant bears the burden of proving that his or her impairment satisfies, or "meets," one of the listed impairments. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995); *see also Hall ex rel. Lee v. Apfel*, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (child's claim). Once a claimant makes such a showing, an irrebuttable presumption of disability arises and benefits must be awarded. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe impairment-related functional limitations." *Id*. An impairment that shows some but not all of the

---

[3] For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

criteria, no matter how severely, does not qualify. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). If a child's impairments do not "meet" a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. 20 C.F.R. § 416.926a(a). A child's impairments "equal" a listed impairment when the child demonstrates a "'marked' limitation[ ] in two domains of functioning or an 'extreme' limitation in one domain." *Id*.

Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments and focuses on "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The regulations include six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*. A "marked" limitation is one which "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It "is 'more than moderate' but 'less than extreme.'" *Id.*

### D.     ALJ Findings

The ALJ applied the Commissioner's disability analysis described above and found at step one that T.J.S. was an adolescent when the application was filed and currently and that he had not engaged in substantial gainful activity at any time relevant to this decision. (Tr. at 12.) At step two, the ALJ found that T.J.S.'s ADHD, learning disability, migraine headaches, bipolar disorder, and asthma were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that T.J.S.'s combination of impairments met or equaled one of the listings in the regulations. (Tr. at 12-19.) Therefore, the ALJ found that T.J.S. was not disabled. (Tr. at 19.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff's son, T.J.S., has been treated for mental health issues since 2006. From 2004 through 2009, T.J.S. was also treated for migraine headaches by Marianne E. Majkowski, D.O. (Tr. at 146-68.) In March 2007, Dr. Majkowski noted that when she told T.J.S.'s mother that "we can write a letter [to T.J.S.'s school] stating that he is under our care, but we cannot do an excuse every time he stays home[,] [his] Mother became upset and irritated regarding this discussion." (Tr. at 156.)

Clinical records provided by Brian Powers, T.L.L.P., indicate that in 2006, T.J.S. was treated for adjustment disorder with a primary problem of anxiety and secondary problems with being oppositional, defiant and depressed. (Tr. at 97-98, 134-39.) However, T.J.S. was able to accurately perform simple calculations, serial sevens, general knowledge, proverb interpretation, similarities/differences, and his immediate and remote memory was intact as well as his judgment and insight. (Tr. at 97.) In addition, his intelligence was found to be "high" and his thought processes were "logical and organized." (Tr. at 97.) Mr. Powers noted that T.J.S. "has a history of chaotic living and severe parental discord, including witnessing and experiencing physical and verbal abuse" and that his "father has been incarcerated multiple times for domestic violence" and that the "family is experiencing severe financial problems and is in danger of home foreclosure." (Tr. at 97.) The prognosis for T.J.S. was "guarded" and the rationale for that rating was that the "[c]lient was brought to treatment by his mother who reported issues with conduct and anger and stated that she was looking for someone to 'change him.'" (Tr. at 101.) The GAF score given Plaintiff was 51-60. (Tr. at 101.) The discharge summary stated:

> Client was seen 4x and his mother was seen for intake. Client's mother cancelled 4x. He made little to no progress but the presenting problem was unclear through four session. It was recommended that his mother attend treatment or the family as a whole attend as many issues seemed to be related to parenting and family.

(Tr. at 101.)

8

T.J.S. was also treated at New Passages Services for behavioral issues. (Tr. at 169-251.) In August 2007, T.J.S. was assessed and his thought processes were found to be "intact" and his thought content was "normal." (Tr. at 173.) T.J.S. was found to be "at risk for impulsive behavior and aggression towards others" and was diagnosed with oppositional defiant disorder and adolescent antisocial behavior. (Tr. at 176-77.)

In January 2007, T.J.S.'s 8th grade English, history, art, science, and math teacher completed a questionnaire. (Tr. at 119-26.) She indicated that T.J.S. has no problems acquiring and using information, interacting and relating with others, moving about and manipulating objects, or caring for himself. (Tr. at 120, 122-24.) His teacher also indicated that T.J.S. has slight to very serious problems attending and completing tasks and that, "[a]cademically, his only weakness is completing and turning in assigned work." (Tr. at 121, 125.) His teacher also stated that she has "tried contacting the mother regarding these concerns but [T.J.S.] has made no improvement." (Tr. at 121.)

A Childhood Disability Evaluation form completed by Zahra Yousuf, M.D., on April 17, 2007, concluded there was "insufficient evidence" of ADHD. (Tr. at 128.) Dr. Yousuf noted that "[d]espite repeated attempts to contact parents through letters and calls, no response has occured [sic]." (Tr. at 132.)

A Psychological Assessment form completed by New Passages in August 2008 concluded that T.J.S.'s thought processes were "intact" and that his thought content was "normal." (Tr. at 231.) The assessment also noted that since T.J.S. had been "aggressive with [his] younger sibling," he was "at risk for further aggression." (Tr. at 232.) The assessment concluded that T.J.S. has oppositional defiant disorder and adolescent antisocial behavior. (Tr. at 233.) It was also noted that T.J.S. "failed 8th grade for the second time . . ., has been smoking and has cigarette lighters on him

9

. . ., [and] admitted to some substance abuse – drinking alcohol and smoking." (Tr. at 236.) When he attended 8th grade for the third time, he received Cs and Bs. (Tr. at 255.)

In March 2009, a New Passages physician, Dr. Lehman, completed a functional capacity assessment which concluded that T.J.S. had a marked limitation in his ability to acquire and use information, attend and complete tasks, and a moderate limitation in his ability to interact and relate with others. (Tr. at 253.)

In April 2009, a Mental Status Examination conducted at the request of Disability Determination Services ("DDS") by Julia Czarnecki, MA, LLP, and Nick Boneff, PhD Licensed Psychologist, concluded:

> The patient's performance on the WAIS III places him on the solidly low-average range of intellectual functioning. There were no significant discrepancies between verbal working memory and processing-speed composite scores although he achieved solidly average composite score on Perceptual Reasoning Tasks and did much better on the Block Design sub test. He is best described as capable of functioning in at least the low-average to mid-low-average range of intellectual functioning. His academic performance incurred WAIT-III scores are consistent with the diagnosis of a specific learning disorder affecting his spelling, written expression, and arithmetic as he is at least three full years behind expected grade levels.

(Tr. at 258.) Findings at Axis I were: "[l]earning disorder, depression, NOS, oppositional defiance disorder by history, ADHD by history, adjustment disorder with disturbance of mood and conduct." (Tr. at 259.)

A Medical Source Statement by Ms. Czarnecki and Dr. Boneff also completed in April 2009 concluded that T.J.S. is not at all limited in his ability to understand, remember, and carry out simple instructions, that he is mildly limited in his ability to understand and remember complex instructions, moderately to markedly limited in his ability to carry out complex instructions, and markedly limited in his ability to make judgments on complex work-related decisions. (Tr. at 260.)

Kim Shrum testified at the administrative hearing that T.J.S. lives with her and five other

children, all of whom are on medication. (Tr. at 28, 35.) She further testified that she has been separated from T.J.S.'s father for about three years and that he does not pay child support. (Tr. at 38.) Ms. Shrum stated that she believes T.J.S.'s problems are "having a hard time with focusing, completing tasks[,] . . . aggression, anger[,] . . . depression, severe mood changes[,]" and being "oppositional." (Tr. at 28.) Ms. Shrum explained that T.J.S. "physically hurts himself, others and property . . . [and,] if he's angry, he'll punch something and hurt himself to the point where, to, on purpose, that he's bleeding – or he's gone after his siblings – and he's recently started going after me." (Tr. at 31.) She also testified that his physical problems are asthma, allergies, and migraines. (Tr. at 29.) Ms. Shrum stated that although she has tried to convince his educators that he should be tested for special education, she has "gotten nowhere." (Tr. at 30.) Instead, his teachers have told Ms. Shrum that TJ.S. is "not turning enough assignments to be tested." (Tr. at 30.)

Ms. Shrum testified that approximately one year prior to the hearing, based on a truant officer's request, T.J.S. was taken before a judge because of T.J.S.'s "extreme tardies." (Tr. at 32-33.) When the ALJ asked Ms. Shrum what the cause of tardiness was, she stated, "because I can't get him moving enough, motivated to want to, you know, get ready" to go "to school." (Tr. at 33.) T.J.S. improved after the judge gave him a stern reprimand, but Ms. Shrum testified that he was starting to show this tardiness problem again. (Tr. at 33.) Ms. Shrum stated that Plaintiff's asthma is "well controlled with medication" but that his migraines "affect school," despite taking prescription drugs to alleviate migraine symptoms. (Tr. at 34-35.)

### F. Analysis and Conclusions

### 1. Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's child disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     **Substantial Evidence**

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 17.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ "erred when he found that Plaintiff had less than a marked limitation in acquiring and using information." (Doc. 17 at 10-14.) Plaintiff relies on Dr. Lehman's (the treating psychiatrist) assessment. (Doc. 17 at 13; Tr. at 253.)

The ALJ cited 20 C.F.R. § 416.926a, considered each of the domains, listed examples cited therein and concluded that T.J.S. has less than a marked limitation in acquiring and using information (Tr. at 15), has a marked limitation in attending and completing tasks (Tr. at 15-16), has less than a marked limitation in interacting and relating with others (Tr. at 16-17), has no limitation in moving about and manipulating objects (Tr. at 17), has no limitation in the ability to care for himself (Tr. at 18), and has no limitation in health and physical well-being. (Tr. at 18.)

"Functional equivalence is determined by 20 C.F.R. § 416.926a, which requires a 'marked' impairment in two 'domains' or an 'extreme' impairment in one domain." *Kelly v. Comm'r of Social Security,* 314 Fed. App'x 827, 829 (6th Cir. 2009). 20 C.F.R. § 416.926a(d). An extreme limitation is defined as one that "interferes very seriously with your ability to independently

initiate, sustain, or complete activities" and that is "more than marked." 20 C.F.R. § 416.926a(e)(3).

Acquiring and using information refers to how well a child acquires or learns information and how well he uses the information he has learned. 20 C.F.R. § 416.926a(g). Adolescents between the ages of 12 and 18 should be able to demonstrate what they have learned in academic assignments and be able to use what they have learned in daily living situations without assistance (e.g., going to the store and using public transportation). 20 C.F.R. § 416.926a(g)(2)(v). They should be able to "comprehend and express both simple and complex ideas" and use "complex language in learning and daily living situations." *Id.* They should also learn to apply these skills practically in order to enter the workplace after finishing school. *Id.*

As noted and analyzed by the ALJ, the regulations provide examples of limited functioning in the acquiring and using information domain. They are:

> (i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night; (ii) You cannot rhyme words or the sounds in words; (iii) You have difficulty recalling important things you learned in school yesterday; (iv) You have difficulty solving mathematics questions or computing arithmetic answers; (v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a(g)(3).

I suggest that substantial evidence supports the ALJ's findings that T.J.S. is not markedly limited in the acquiring and using information domain and, thus, that T.J.S. is not disabled. Dr. Lehman of New Passages concluded that T.J.S has a marked limitation in the ability to acquire and use information. (Tr. at 253.) However, I can find no other evidence of record supporting this finding. Instead, all other evidence of record supports the opposite conclusion.

In 2006, T.J.S. was able to accurately perform simple calculations, serial sevens, general knowledge, proverb interpretation, similarities/differences, and his immediate and remote memory

13

was intact as well as his judgment and insight. (Tr. at 97.) In addition, his intelligence was found to be "high" and his thought processes were "logical and organized." (Tr. at 97.) Other data from New Passages concluded that T.J.S.'s thought processes were "intact" and his thought content was "normal" in 2007 and 2008. (Tr. at 173, 231.) The professional who spends the most time with T.J.S., his 8th grade English, history, art, science, and math teacher, indicated that T.J.S. has no problems acquiring and using information, interacting and relating with others, moving about and manipulating objects, or caring for himself. (Tr. at 120, 122-24.) His teacher also indicated that T.J.S. has slight to very serious problems attending and completing tasks and that "[a]cademically, his only weakness is completing and turning in assigned work." (Tr. at 121, 125.) In addition, a Medical Source Statement by Ms. Czarnecki and Dr. Boneff completed in April 2009 concluded that T.J.S. is not at all limited in his ability to understand, remember, and carry out simple instructions. (Tr. at 260.)

Accordingly, I suggest that there is substantial evidence supporting the ALJ's finding that T.J.S. is not markedly limited in the acquiring and using information domain.

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: June 13, 2011                        United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: June 13, 2011                        By    s/Patricia T. Morris
                                                        Law Clerk to Magistrate Judge Binder